IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AMIT FATNANI** and **SRINIVAS GURUZU,** individually, and on behalf of all others similarly situated, | Case No. 3:23-cv-712-SI **OPINION AND ORDER** |
| Plaintiffs, | |
| v. | |
| **JPMORGAN CHASE & CO.; KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC.,** as successor to Umpqua Holdings Corporation**; EVOLVE BANK AND TRUST;** and **MERCURY TECHNOLOGIES INC.,** | |
| Defendants. | |

Daniel B. Centner and Grace A. Van Hancock, PEIFFER WOLF CARR KANE CONWAY & WISE, LLP, 935 Gravier Street, Suite 1600, New Orleans, LA 70112; Michael Fuller, Emily Templeton, and Nate Haberman, OLSENDAINES, US Bancorp Tower, 111 SW 5th Avenue, Suite 3150, Portland, OR 97204; Kelly D. Jones, LAW OFFICE OF KELLY D. JONES, 819 SE Morrison Street, Suite 255, Portland, OR 97214; Daniel J. Nichols, JURISLAW LLP, Three Centerpointe Drive, Suite 160, Lake Oswego, Oregon 97035; Scott Silver and Ryan Schwamm, SILVER LAW GROUP, 11780 W Sample Road, Coral Springs, FL 33065; and Peter M. Spett, LAW OFFICE OF PETER M. SPETT, 3020 Windsor Circle, Boca Raton, FL 33434. Of Attorneys for Plaintiffs and Settlement Class.

Layal Bishara, GREENBERG TRAURIG LLP, 1840 Centruy Park E, Suite 1900, Los Angeles, CA 90067; Nikki E. Dobay, GREENBERG TRAURIG LLP, 10260 SW Greenburg Road, Suite 400, Portland, OR 97223; and Jonathan H. Claydon and Paul J. Ferak, GREENBERG TRAURIG LLP, 77 W. Wacker Drive, Suite 3100, Chicago, IL 60601. Of Attorneys for Defendant JPMorgan Chase & Co.

Anthony John Rospert, Brian Lamb, and Rebecca Pronesti, THOMPSON HINE LLP, 3900 Key Center, 127 Public Square, Cleveland, OH 44114; and Joel A. Parker, SCHWABE, WILLIAMSON & WYATT, 1211 SW 5th Avenue, Suite 1900, Portland, OR 97204. Of Attorneys for Defendant KeyBank National Association.

Keith A. Ketterling, Madeleine Holmes, Lydia Anderson-Dana, Carsen Sara Nies, Kevin Michael Flannery, and Timothy S. DeJong, STOLL STOLL BERNE LOKTING & SCHLACHTER, PC, 209 S.W. Oak Street, Suite 500, Portland, OR 97204. Of Attorneys for Defendant Columbia Banking System, Inc.

Ciaran Patrick Ahern Connelly and James T. McDermott, MCDERMOTT WEAVER CONNELLY CLIFFORD LLP, 1000 SW Broadway, Suite 960, Portland, OR 97205; and Jeffrey Huberman and Robert D. Wick, COVINGTON & BURLING, 850 10th Street NW, Washington DC, DC 20001. Of Attorneys for Defendant Evolve Bank and Trust.

Paul Llewellyn and Zachary Christian Flood, LEWIS & LLEWELLYN LLP, 601 Montgomery Street, Suite 2000, San Francisco, CA 94111; and Scott L. Mullins, MULLINS LAW OFFICE, LLC, 1000 SW Broadway Street, Suite 2300, Portland, OR 97205. Of Attorneys for Defendant Mercury Technologies, Inc.

**Michael H. Simon, District Judge.**

Plaintiffs Amit Fatnani and Srinivas Guruzu bring this putative class action lawsuit alleging violations of Oregon securities law and aiding and abetting breach of fiduciary duty against the following Defendants: JPMorgan Chase & Co. ("JPMorgan"); KeyBank National Association ("KeyBank"); Columbia Banking System, Inc., as successor to Umpqua Holdings Corporation ("Columbia"); Evolve Bank and Trust ("Evolve"); and Mercury Technologies Inc. ("Mercury").[1] Plaintiffs allege that these Defendants violated Oregon securities law by participating in and providing material aid in the misleading sale of unregistered interests. Plaintiffs have reached amended settlements with Evolve and Mercury (collectively, the "Settling Defendants"), moved for preliminary approval of those amended settlements (ECF 159), and the Court has preliminarily approved them. ECF 160. Now before the Court is

---

[1] Plaintiffs also named as defendants Intertrust Group BV and Intertrust Corporate and Fund Services LLC. ECF 82. The Court, however, granted the motion to dismiss for lack of personal jurisdiction filed by those two defendants (ECF 141).

Plaintiffs' unopposed Motion for Final Approval of Settlements Between Plaintiffs and Defendants Evolve Bank & Trust and Mercury Technologies Inc., and Award of Attorney's Fees, Reimbursement of Expenses, and Service Awards to Plaintiffs, ECF 161.[2]

## BACKGROUND

This action arises from an investment fraud referred to as the "Rose City Ponzi Scheme," started by Sam Ikkurty and Ravi Avadhanam. The Rose City Ponzi Scheme used limited partnership and limited liability companies known as the "Jafia Group" to defraud nearly $50 million from hundreds of individuals. The Commodity Futures Trading Commission ("CFTC") charged Ikkurty and Avadhanam with organizing a Ponzi scheme, and Avadhanam pleaded guilty. The presiding court then entered judgment in favor of the CFTC and against Ikkurty on all counts. Memorandum Opinion and Order, *Commodity Futures Trading Comm'n v. Ikkurty*, (N.D. Ill. July 22, 2024), ECF 376.

Plaintiffs allege that Defendants participated in and provided material aid to the Rose City Ponzi Scheme, including by accepting and clearing the funds necessary to complete the unlawful sales transactions and processing the supposed "distributions" in the scheme. Specifically, Plaintiffs allege that Evolve housed some of the Jafia Group's accounts, totaling almost $6 million, on the Mercury platform, and that Mercury issued account statements on behalf of itself and Evolve. Plaintiffs further assert that investor deposits were deposited into the Evolve/Mercury account, and that the same funds were paid out of the account as purported distributions. Plaintiffs allege that $1.6 million of the $6 million that Settling Defendants housed

---

[2] Unless otherwise indicated, all capitalized terms used in this Opinion and Order have the same meanings as defined in the two amended Settlement Agreements now before the Court, ECF 159-5 and ECF 159-6.

was transferred to another of the Jafia Group's accounts. Defendants, including the Settling Defendants, deny liability.

**DISCUSSION**

**A.  Settlement Class Certification**

    **1.  Notice to the Class**

The Court granted preliminary approval to the parties' proposed notice procedure. ECF 160. The Court is satisfied that the notice procedure was carried out according to the applicable standards. The Court finds that notice of the Stipulations was given to the Settlement Class by the best means practicable under the circumstances, including emailing or mailing the Notice to Class Members and posting the Notice, Stipulations, and Preliminary Approval Order on a dedicated website.

The Notice provided Class Members with all required information including, among other things: (1) a summary of the Action and the claims asserted; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the Stipulations; (4) the fact that no affirmative action was needed to receive the benefit of class membership, but notice that Class Members could opt out of the Settlement Class; (5) an explanation of Class Members' opt-out rights, the date by which Class Members must opt out, and information about how to do so; (6) explaining the release of claims should Class Members choose to remain in the Settlement Class; (7) instructions about how to object to the Stipulations and the deadline for Class Members to submit any objections; (8) instructions about how to object to the requested attorney's fees, expenses, and service awards and the deadline for Class Members to submit any objections; (9) the date, time, and location of the final approval hearing; (10) the internet address for the settlement website from which Class Members could obtain more information on the Stipulations; (11) contact information for the settlement administrator and the Court; and

(12) information about how Class Counsel and the Class Representatives would be compensated. The notice is sufficient. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (reaffirming that a class notice need only "generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009))).

The form and method of notifying the Settlement Class fairly and adequately advised Class Members of all relevant and material information about the Action and the proposed Stipulations. The Court finds that the notice satisfies the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.

### 2. Rule 23 Requirements

To certify either a settlement class or a litigation class, the requirements of Rule 23 must be satisfied. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Rule 23 affords this Court "broad discretion over certification of class actions." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one subsection of Rule 23(b). *See, e.g.*, *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 724 & n.5 (9th Cir. 2007). Rule 23 sets forth more than a "mere pleading standard." *Wal-Mart*, 564 U.S. at 350. On the other hand, Rule 23 provides district courts with broader discretion to certify a class than to deny certification. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). In considering a litigation class, the court "must be concerned with manageability at trial," whereas in considering a settlement class, "such manageability is not a concern . . . [because], by definition, there will be no trial." *Id.* at 556-57. "[I]n deciding whether to certify a settlement class, a district court must give heightened attention to the definition of the class or subclasses." *Id.* at 557. This determination "demand[s] undiluted, even heightened, attention in the settlement context" because the court "lack[s] the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 848-49 (1999) ("When a district court, as here, certifies for class action settlement only, the moment of certification requires heightened attention." (cleaned up)).

The Rule 23 analysis is "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351 (quotation marks omitted); *Comcast Corp.*, 569 U.S. at 33-34. Nevertheless, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* A district court, however, "*must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original).

Plaintiffs move without objection to certify the Settlement Class defined as:

> All individuals and entities that invested in the "Alleged Ponzi
> Scheme" and/or contributed funds to the "Alleged Ponzi Scheme
> Entities."
>
> Excluded from the Class are Defendants, any entities in which
> Defendants have a controlling interest, Sam Ikkurty, Ravi
> Avadhanam, and any Judge to whom this action is assigned and
> any member of such Judge's staff and immediate family.

The Court previously agreed that the Class met the requisite factors in conditionally certifying

the Class for settlement purposes in the preliminary approval of the Settlements. The Court,

however, must now conduct a "rigorous" analysis of the Rule 23 factors.

### a. Numerosity

Rule 23(a)(1) requires Plaintiffs to demonstrate that the proposed class "is so numerous

that joinder of all members is impracticable." Rule 23(a)(1) provides no bright-line test or

minimum number of class members necessary to meet the numerosity requirement. Instead, the

court must evaluate the specific facts of each case. *Gen. Tel. Co. of the Nw., Inc. v. Equal Emp.*

*Opportunity Comm'n*, 446 U.S. 318, 330 (1980). In general, classes of 20 members or fewer are

too small, classes of 21 to 40 members may or may not be sufficiently numerous depending on

the facts of the case, and classes of 41 and higher are sufficiently numerous. *See* 5 James Wm.

Moore et al., *Moore's Federal Practice - Civil* § 23.22(1)(b) (3d ed. 2021). In this district, there

is a "rough rule of thumb" that more than 40 class members meets the numerosity requirement.

*J.N. v. Or. Dep't of Educ.*, 338 F.R.D. 256, 264 (D. Or. 2021) (quotation marks omitted); *see*

*also Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983)

(same); 1 *McLaughlin on Class Actions* § 4:5 (21st ed.) ("The rule of thumb adopted by most

courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement."); 5

*Moore's Federal Practice - Civil* § 23.22(1)(b) ("A class of 41 or more is usually sufficiently

numerous. Once again, many courts have ruled that classes with more than 40 members satisfy the numerosity requirement.").

Records provided to the Settlement Administrator confirmed the number of Class Members to be 445. ECF 161-3 ¶ 6 (Declaration of Justin Hughes, a director for the Settlement Administrator). The Court therefore finds that the Class meets the numerosity requirement.

### b.  Commonality

Rule 23(a)(2) states that class certification is appropriate only when the case presents "questions of law or fact common to the class." To satisfy the commonality requirement, Plaintiffs must show that the class members suffered the "same injury" and that their claims depend upon a "common contention." *Wal-Mart*, 564 U.S. at 350 (quotation marks omitted). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* But class members need not have every issue in common. Commonality requires only "a single significant question of law or fact" in common. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022); *see also Wal-Mart*, 564 U.S. at 359. "These common questions may center on 'shared legal issues with divergent factual predicates [or] a common core of salient facts coupled with disparate legal remedies.'" *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (alteration in original) (quoting *Hanlon*, 150 F.3d at 1019).

Plaintiffs allege that the Class incurred losses due to Settling Defendants' participation in or provision of material aid to the Rose City Ponzi Scheme. Specifically, Plaintiffs allege that Settling Defendants accepted and cleared funds necessary to complete the unlawful sales transactions and processed supposed "distributions" in the scheme. There are common issues of

law and fact stemming from these allegations, including whether the Jafia Group securities were sold to Class Members in violation of Oregon securities law, whether the Jafia Group securities were sold by means of false statements of fact or omissions of material fact, and whether Settling Defendants participated in or materially aided the unlawful sale of Jafia Group securities. The Court finds that the Settlement Class meets the commonality requirement.

### c.  Typicality

To meet the typicality requirement, Plaintiffs must show that the named parties' claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Under the "permissive standards" of Rule 23(a)(3), "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), *superseded by statute on other grounds*. To determine whether claims and defenses are typical, courts look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon*, 976 F.3d at 508).

Plaintiffs' claims are based on the same conduct as the claims of the Settlement Class and there is nothing to suggest that Plaintiffs' claims are not coextensive with the those of the Class. Thus, the Class meets the typicality requirement.

### d.  Adequacy of Representation

Rule 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." This

requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020; *see also* Fed. R. Civ. P. 23(g) (setting out factors to consider before appointing class counsel). The adequacy requirement is based on principles of constitutional due process. Accordingly, a court cannot bind absent class members if class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940); *Hanlon*, 150 F.3d at 1020.

Plaintiffs are adequate representatives of the class because there is no evidence to suggest that Plaintiffs have any conflicts of interest with other Class Members. Class Counsel has vigorously pursued the interests of the Class, including by conducting a pre-suit investigation, filing multiple complaints, obtaining discovery, opposing Defendants' motions to dismiss, and engaging in settlement discussions. Thus, the Court finds that the Plaintiffs and Class Counsel are adequate to represent the Class.

### e. Predominance

Rule 23(b)(3) requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This analysis, in accord with Rule 23's "principal purpose" of "promot[ing] efficiency and economy of litigation," inquires into "the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah*, 731 F.3d at 963-64 (cleaned up). The focus of this inquiry, however, is on "*questions* common to the class"—plaintiffs need not, at this threshold, "prove that the predominating question[s] will be answered in their favor." *Amgen*, 568 U.S. at 459, 468 (emphasis in original).

"[T]here is substantial overlap between" the test for commonality under Rule 23(a)(2) and the predominance test under 23(b)(3). *Wolin*, 617 F.3d at 1172. The predominance test, however, "is 'far more demanding,' and asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Id.* (citation omitted) (quoting *Amchem*, 521 U.S. at 623-24). To determine whether common questions predominate, the Court begins with "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

The common questions relevant to Plaintiffs' claims predominate over any issues relevant to any individual Plaintiff. Plaintiffs' claims share essential factual issues including whether the Jafia Group violated Oregon securities law, and whether Settling Defendants participated in or materially aided the sale of these securities. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."). Thus, the Class meets the predominance requirement.

### f.   Superiority

Rule 23(b)(3)'s superiority requirement tests whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). To make this determination, a court looks to "whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon*, 150 F.3d at 1023. In turn, this inquiry "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution." *Id.* The Ninth Circuit recognizes that "[d]istrict courts are in the best position to consider the most fair and efficient procedure for conducting any given litigation, and so must be given wide discretion to evaluate superiority." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010) (cleaned up). Relating to superiority, the purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a

single powerful unit." *Id.* at 722 (quotation marks omitted). This allows plaintiffs that otherwise likely would be "unable to proceed as individuals because of the disparity between their litigation costs and what they hope to recover. . . . 'to pool claims which would be uneconomical to litigate individually.'" *Loc. Joint Exec. Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)).

Rule 23(b)(3) provides four non-exhaustive factors for courts to consider. These factors are:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Regarding the first factor, "[w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin*, 617 F.3d at 1175. The cost of litigating individual securities fraud claims is high when compared to the amount of damages at stake for putative class members. *See In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 161 (2d Cir. 2021) ("Securities fraud cases are often complex and costly . . . ."). Accordingly, "[b]ecause individual damages pale in comparison to the costs of litigation, this factor points toward certification." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316 (N.D. Cal. 2018).

As to the second factor, this is the only action brought against Defendants for the alleged participation in the Rose City Ponzi Scheme. The second factor therefore favors certification. As to the third factor, concentrating this litigation in the District of Oregon is appropriate because

the challenged conduct occurred in Oregon and potential Class Members are not centralized in any one geographic location.

The Court need not consider the fourth factor because the parties only seek certification of a settlement class, not a litigation class. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial."). The Court finds that the Class meets the superiority requirement.

### 3. Conclusion

The Class meets the requirements for class certification. The Court certifies for final settlement purposes among the Class and the Settling Defendants the following class: all individuals and entities that invested in the Alleged Ponzi Scheme and/or contributed funds to the Alleged Ponzi Scheme Entities. Excluded from the Settlement Class are: (i) Defendants; (ii) any entities in which Defendants have a controlling interest; (iii) Sam Ikkurty; (iv) Ravi Avadhanam; and (v) U.S. District Judge Michael H. Simon and his immediate family members and chambers staff. Also excluded from the Settlement Class are any persons and entities who exclude themselves by submitting a request for exclusion that is accepted by the Court.

## B. Settlement Approval

### 1. General Standards

Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, to approve a class action settlement, a court must find

that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Lane*, 696 F.3d at 818.

The settlement must be considered as a whole, and although there are "strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure it is 'fair, adequate, and free from collusion.'" *Lane*, 696 F.3d at 818-19 (quoting *Hanlon*, 150 F.3d at 1027). A court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The Ninth Circuit has articulated a number of factors guiding this review, including:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Lane*, 696 F.3d at 819. Courts within the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez*, 563 F.3d at 965.

Class action settlements involve "unique due process concerns for absent class members who are bound by the court's judgments." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (cleaned up). When the settlement agreement is negotiated before formal class certification, as in this case, the court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Id*. (cleaned up). This more "exacting review" is warranted "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed

plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819 (quotation marks omitted).

The Ninth Circuit has recognized, however, that "[j]udicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Thus, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai*, 926 F.3d at 556 (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

### 2. Litigation Strategy Factors

The Court begins by analyzing the litigation strategy focused factors—the strength of Plaintiffs' case; the risk, expense, complexity, and likely duration of future litigation; and the risk of maintaining class action status throughout trial. Plaintiffs contend that although they believe they have meritorious claims, proceeding with this litigation would be risky. Plaintiffs note that Settling Defendants advanced "unique" factual and legal arguments that created significant uncertainty going forward. Plaintiffs further note that even if their claims had survived a motion to dismiss, they would continue to face additional hurdles at the summary judgment stage and lengthy litigation beyond that, including a trial and likely appeals. Besides the risk of dismissal before trial or loss at trial, continued litigation would be expensive and time-consuming. Further, class certification had not begun at the time the parties reached a settlement, and both sides bore the risk that a class would or would not be certified. Thus, given the parties' uncertainty of the outcome and the complexity of this case, these litigation strategy factors favor approval of the Settlement Agreements.

### 3.  Amount Offered in Settlement

The Settlement amount is $90,000. The proposed method of allocation awards each claimant a pro rata share of the Settlement Fund based on the claimant's net investment losses. Plaintiffs estimate that investors hold approximately $65 million in allowed claims, meaning that the Settlement amount provides a recovery of only 0.1 percent. It is important to note, however, that the Settlement amount is only against two of the remaining five Defendants, and Plaintiffs continue to pursue larger recoveries on their claims against the three non-settling Defendants. Further, Plaintiffs and Class Counsel are collaborating with the Receiver in the CFTC action, who anticipates making a meaningful distribution to victims—the latest filings show that the CFTC action currently has more than $26 million in the Qualified Settlement Fund. Based on these facts, the amount offered in these Settlement Agreements is adequate and supports approval of the Settlements.

### 4.  Extent of Discovery Completed

Formal discovery is not required before a class action settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239-40 (9th Cir. 1998). Rather, "[a]pproval of a class action settlement is proper as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013). The parties assert that although this case settled before formal discovery, they nevertheless established a substantial evidentiary record and exchanged sufficient information to adequately determine the strengths and weaknesses of their positions. The parties obtained documents from the CFTC's action against Sam Ikkurty and exchanged information. *See Zepeda v. PayPal, Inc.*, 2017 WL 1113293, at *14 (N.D. Cal. Mar. 24, 2017) (concluding that although the parties had not engaged in formal discovery, "the parties informally exchanged information

and documents in connection with the three prior mediations conducted in this action," which

favored approval of the settlement). This factor thus supports approval of the Settlements.

### 5. Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a

settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec.*

*Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Although counsel's views are instructive, they do not

entitle the settlement to a presumption of fairness. *See Roes, 1-2 v. SFBSC Mgmt., LLC*, 944

F.3d 1035, 1049 (9th Cir. 2019). The Court is satisfied that Class Counsel has extensive

experience litigating class actions. Thus, Class Counsel's recommendation that the Settlements

are fair, reasonable, and adequate favors approval.

### 6. Presence of a Government Participant

The Class Action Fairness Act ("CAFA") provides in relevant part:

> Not later than 10 days after a proposed settlement of a class action
> is filed in court, each defendant . . . shall serve upon the
> appropriate State official of each State in which a class member
> resides and the appropriate Federal official, a notice of the
> proposed settlement[.]
>
> * * *
>
> An order giving final approval of a proposed settlement may not be
> issued earlier than 90 days after the later of the dates on which the
> appropriate Federal official and the appropriate State official are
> served with the notice required under subsection (b).

28 U.S.C. § 1715(b), (d). The Settlement Administrator, on behalf of Settling Defendants, mailed

notices of the proposed settlements to the U.S. Attorney General and state Attorneys General of

all 50 states, the District of Columbia, and the United States Territories by the required deadline

under CAFA. ECF 161-3 ¶ 5. The Settlement Administrator also sent notices to the Board of

Governors of the Federal Reserve System and officials at the Arkansas State Bank Department.

*Id.* No state or federal official has objected to the Settlements or otherwise become involved in the case. This factor therefore favors approval.

### 7. Reaction of the Class Members to the Settlement

No Class Member objected to either of the two Settlements and only one Member opted out. The low rate of opt-outs and the lack of objections show that Class Members favor the Settlements. This factor favors approval.

### 8. Evidence of Collusion

When the settlement agreement is negotiated before formal class certification, as in this case, a court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; and (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *Id.* at 947.

Class Counsel seeks 25 percent of the Settlement amount, which is not a disproportionate share. Further, the Settlements contain no "clear sailing" or reversion provisions. The Court identifies no evidence of collusion or other conflicts of interest, which favors approval.

### 9. Conclusion

The above factors support approval of the two Settlement Agreements. The Court therefore finds that the two Settlements and Plans of Allocation are fair, reasonable, and adequate.

### C. Attorney's Fees and Expenses

#### 1. Class Representative Incentive Awards

Plaintiffs and Class Counsel request service awards in the amount of $1,000 to

Mr. Fatnani and $500 to Mr. Guruzu. "Incentive awards are payments to class representatives for

their service to the class in bringing the lawsuit." *Radcliffe*, 715 F.3d at 1163. They are often

taken from a common settlement fund. *Id.* Although incentive awards are "fairly typical in class

action cases," *Rodriguez*, 563 F.3d at 958, they should be scrutinized carefully to ensure "that

they do not undermine the adequacy of the class representatives," *Radcliffe*, 715 F.3d at 1163.

The adequacy of class representatives can be undermined by, for example, incentive awards that

are contingent on the named representatives approving the class settlement, *see id.* at 1164, or by

disproportionately large incentive awards, *see Staton*, 327 F.3d at 975, 977 (reversing district

court's approval of incentive awards approximately sixteen times greater than the recovery of

unnamed class members). The Court finds that the requested service awards are reasonable.

#### 2. Attorney's Fees

Class Counsel requests attorney's fees in the amount of 25 percent of the common fund,

or $22,500. Requests for attorney's fees must be made by a motion pursuant to Rule 54(d)(2) and

Rule 23(h) of the Federal Rules of Civil Procedure. In addition, notice of the motion must be

served on all parties and class members. Fed. R. Civ. P. 23(h). When settlement is proposed

along with a motion for class certification, notice to class members of the fee motion ordinarily

accompanies the notice of the settlement proposal itself. Fed. R. Civ. P. 23(h) advisory

committee's notes to 2003 amendment. The deadline for class members to object to requested

fees must be set after the motion for the fees and documents supporting the motion have been

filed. *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993-94 (9th Cir. 2010).

"Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire

into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members." *Id.* at 994. Here, Class Counsel filed its motion for attorney's fees and supporting documents 31 days before the deadline to file objections, thereby complying with *In re Mercury*.

In considering the amount of attorney's fees for class counsel where there is a common fund, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *In re Bluetooth*, 654 F.3d at 942. Under either method, the court must exercise its discretion to achieve a "reasonable" result. *Id.* Because reasonableness is the goal, "mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (quotation marks omitted). When using the percentage method, 25 percent is the "benchmark" fee award, but this amount may be adjusted upward or downward when "special circumstances" warrant a departure. *In re Bluetooth*, 654 F.3d at 942 (quotation marks omitted). Courts must place in the record the relevant special circumstances. *Id.* As the Ninth Circuit has explained,

> In *Vizcaino* [*v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)], we identified several factors courts may consider when assessing requests for attorneys' fees calculated pursuant to the percentage-of-recovery method: (1) the extent to which class counsel achieved exceptional results for the class; (2) whether the case was risky for class counsel; (3) whether counsel's performance generated benefits beyond the cash settlement fund; (4) the market rate for the particular field of law; (5) the burdens class counsel experienced while litigating the case; (6) and whether the case was handled on a contingency basis.

> *Vizcaino* did not establish an exhaustive list of factors for assessing fee requests calculated using the percentage-of-recovery method, but district courts have frequently referred to the factors it identified when considering fee awards for class counsel. Ultimately, district courts must ensure their fee awards are

> supported by findings that take into account all of the
> circumstances of the case.

*In re Optical Disk Drive Prods. Antitrust Litig.*, 959 F.3d 922, 930 (9th Cir. 2020) (cleaned up);

*see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (noting

that the *Vizcaino* factors "include the extent to which class counsel achieved exceptional results

for the class, whether the case was risky for class counsel, whether counsel's performance

generated benefits beyond the cash settlement fund, the market rate for the particular field of law

(in some circumstances), the burdens class counsel experienced while litigating the case (e.g.,

cost, duration, foregoing other work), and whether the case was handled on a contingency basis"

and that in addition, "a court may cross-check its percentage-of-recovery figure against a lodestar

calculation" (quotation marks omitted)).

The Court exercises its discretion to use the percentage-of-recovery method in this case.

As described above, this case presents complex legal issues and litigation risks, and Class

Counsel secured a favorable Settlement amount. These factors favor the 25 percent benchmark

fee. Further, a lodestar cross check confirms that a 25 percent fee is appropriate. Class Counsel

expended 68 hours at hourly rates of $450 and $575 on work directly related to the claims

against Settling Defendants, and additional hours on tasks that were not easily divided between

Settling Defendants and the non-settling Defendants. These rates are reasonable for attorneys of

Class Counsel's skill and experience. The total lodestar amount is $31,350. The requested 25

percent fee is $22,500, which represents a 0.7 multiplier of the lodestar cross check. Cases

involving similar alleged securities fraud generally involve multipliers of greater than one, and

thus the requested multiplier is reasonable. *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F.

Supp. 2d 1036, 1048 (N.D. Cal. 2008) (finding a multiplier of 1.33 reasonable and noting that in

securities cases, "courts have approved multipliers ranging between 1 and 4"); *In re Stable Road*

*Acquisition Corp.*, 2024 WL 3643393, at *15 (C.D. Cal. Apr. 23, 2024) ("A multiplier of 1.76 is well within the range of multipliers commonly awarded in securities class actions and other complex litigation." (collecting cases)); *In re IsoRay, Inc. Sec. Litig.*, 2017 WL 11461073, at *1 (E.D. Wash. Mar. 7, 2017) (finding multipliers of 1.48 or 1.77 to be reasonable for securities cases). "A lodestar cross-check that results in a fractional multiplier supports the reasonableness of Counsel's requested percentage award." *Ali v. Franklin Wireless Corp.*, 2024 WL 5179910, at *13 (S.D. Cal. Dec. 19, 2024) (citing *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *7 (S.D. Cal. Oct. 30, 2020) (finding a 0.94 multiplier reasonable) and *Khoja v. Orexigen Therapeutics*, 2021 WL 5632673, at *10 (S.D. Cal. Nov. 30, 2021) (finding a 0.528 multiplier a "strong indication of reasonableness")). The Court therefore finds that a 25 percent fee is reasonable.

### 3. Costs

Class Counsel also seeks recovery of up to $17,000 in expenses for administering the Settlements. The Settlement Administrator provided a bid of $15,000, and as of February 28, 2025, Class Counsel had paid actual expenses of $11,937.23. Class Counsel requests approval of up to $17,000, instead of the bid of $15,000 in case something unexpected requires additional costs but confirms that Class Counsel will seek reimbursement only for the actual amounts invoiced by the Settlement Administrator. The Court finds that the actual expenses for administering the Settlements are reasonable and necessary in this case and are recoverable from the Settlement Fund. *See, e.g.*, *Wininger v. SI Mgmt., L.P.*, 301 F.3d 1115, 1120-21 (9th Cir. 2002) ("[J]urisdiction over a fund allows for the district court to spread the costs of the litigation among the recipients of the common benefit."); *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members

who benefit by the settlement."). Given that expenses to date are nearly $12,000 and no payments have yet been made to class members, the Court accepts that the original bid of $15,000 likely is too low for administration costs through the end of the Settlement. Thus, the Court awards costs in the requested amount of up to $17,000.

## CONCLUSION

The Court GRANTS Plaintiffs' unopposed Motion for Final Approval of Settlements Between Plaintiffs and Defendants Evolve Bank & Trust and Mercury Technologies Inc., and Award of Attorney's Fees, Reimbursement of Expenses, and Service Awards to Plaintiffs, ECF 161. The Court awards Class Counsel $22,500 in attorney's fees plus its actual costs incurred in administering the Settlement to be paid from the Settlement Fund up to $17,000. The Court further approves service awards in the amount of $1,000 to Mr. Fatnani and $500 to Mr. Guruzu to be paid from the Settlement Fund.

**IT IS SO ORDERED**.

DATED this 6th day of May, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge