**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Phone 503-222-2000

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **AMIT FATNANI and SRINIVAS GURUZU**, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs<br><br>**JPMORGAN CHASE BANK, N.A.; EVOLVE BANK AND TRUST; MERCURY TECHNOLOGIES INC.; KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; and INTERTRUST CORPORATE AND FUND SERVICES LLC,**<br><br>Defendants. | Case No. 3:23-cv-00712<br><br><br>**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES LLC; AND JPMORGAN CHASE BANK, N.A.,** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................iv

CERTIFICATION OF COMPLIANCE WITH LR 7-1 .................................................1

MOTION ......................................................................................................................1

MEMORANDUM IN SUPPORT ..................................................................................4

I.     INTRODUCTION AND SUMMARY OF RELIEF SOUGHT .................4

II.    PROPOSED TIMELINE .........................................................................5

III.   BACKGROUND......................................................................................7
      A.  Plaintiffs' Claims Against Settling Defendants .................................7
      B.  Procedural Background......................................................................9

IV.   SUMMARY OF KEY SETTLEMENT TERMS.....................................10
      A.  The Settlement Class Definition ......................................................10
      B.  The Settlement Consideration..........................................................11
      C.  Release of Claims ...........................................................................11

V.     NOTICE OF THE SETTLEMENT ........................................................13

VI.   ARGUMENT..........................................................................................14
      A. The Proposed Settlement Warrants Preliminary Approval. ............14
         1.  The Settlement is Entitled to a Presumption
            of Fairness as the Result of Non-Collusive,
            Informed, Arm's-Length Negotiations. ........................................15
         2.  The Settlement Does Not Suffer from
            Any Obvious Deficiencies.............................................................19
         3.  The Settlement Does Not Improperly Grant Preferential
            Treatment to Class Representatives or Segments of the
            Settlement Class ...........................................................................20
         4.  The Settlements Fall Within the Range of Possible Approval ....21

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

B.  The Court Should Make a Preliminary Determination that the
Proposed Settlement Class Satisfies the Standard for Certification
Under Rule 23 ................................................................................................ 22

1.  The Rule 23(a) Requirements Are Met. ...................................... 23

a.  The Settlement Class Is So Numerous that Joinder Is
Impracticable. ........................................................................... 23

b.  Numerous Common Issues Exist. .......................................... 24

C.  The Class Representatives' Claims Are Typical of
Those of Other Class Members. ...................................................................... 25

D.  The Class Representatives and Their Counsel Adequately
Represent the Interests of the Settlement Class. ........................................ 27

E.  The Requirements of Rule 23(b)(3) Are Met. ................................................ 27

1.  Common Questions of Fact or Law Predominate. ....................... 28

2.  The Class Action Mechanism is Superior to Any Other
Method of Adjudication. ................................................................ 30

F.  The Proposed Method of Distribution is Fair and Reasonable. ......... 31

G.  The Proposed Settlement Administrator Should be Approved. ........ 32

H.  The Form and Method of Notice Should be Approved. ..................... 33

I.  The Court Should Appoint Class Counsel ........................................... 37

VII. CONCLUSION ................................................................................................ 38

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS
AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING
SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION;
INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK,
N.A.

# TABLE OF AUTHORITIES

CASES                                                                          Page No(s).

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) .................................................................................. 29, 31, 32, 33

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
    568 U.S. 455 (2013) .................................................................................. 30, 31

*Bell v. Consumer Cellular, Inc.*,
    2017 WL 2672073 (D. Or., 2017) .............................................................. 18, 20

*Bickley v. Schneider Nat'l Inc.*,
    2016 WL 4157355 (N.D. Cal., 2016) .......................................................... 16

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ...................................................................... 24

*Churchill Vill., L.L.C. v. GE*,
    361 F.3d 566 (9th Cir. 2004) ...................................................................... 36

*Ciuffitelli v. Deloitte & Touche LLP*,
    2019 WL 1441634 (D. Or., 2019) .............................................................. 25

*Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................... 15, 22

*Collins v. Cargill Meacollt Sols. Corp.*,
    274 F.R.D. 294 (E.D. Cal. 2011) ................................................................ 15

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013) ...................................................................................... 29

*Costelo v. Chertoff*,
    258 F.R.D. 600 (C.D. Cal. 2009) ................................................................ 27

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) .................................................................... 17

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS
AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING
SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION;
INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK,
N.A.

*Couser v. Comenity Bank,*
    125 F. Supp. 3d 1034 (S.D. Cal. 2015)............................................................ 20


*Dubeau v. Sterling Sav. Bank,*
    2013 U.S. Dist. LEXIS 123337 (D. Or., 2013)................................................ 32

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011)............................................................ 25, 27, 28

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .................................................. 2

*Fidel v. Farley,*
    534 F.3d 508 (6th Cir. 2008)............................................................... 36

*Fireman's Fund Ins. Co.,*
    231 F.R.D. 391 (N.D. Cal. 2005) ....................................................... 27

*Fosbre v. Las Vegas Sands Corp.,*
    2015 WL 3722496 (D. Nev., 2015) ..................................................... 32

*Fraley v. Facebook, Inc.,*
    2012 WL 5838198 n.1 (N.D. Cal., 2012)............................................. 16

*Fraser v. ASUS Computer Int'l,* No. C,
    12–00652 WHA, 2012 WL 6680142 (N.D. Cal. Dec. 21, 2012) ....................... 20

*Freedman v. Louisiana-Pacific Corp.,*
    922 F. Supp. 377 (D. Or. 1996) ........................................................ 27

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998).................................................. *passim*

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992)............................................................. 27

*Hurst v. First Student, Inc.,*

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

  2015 WL 6437196 (D. Or., 2015) ............................................................... 26, 27

*Hyundai and Kia Fuel Economy Litig.*, F.3d,
  2019 WL 2376831 (9th Cir., 2019) ............................................................ 24, 30

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,
  281 F.R.D. 134 (S.D.N.Y. 2012) ....................................................................... 27

*In re Blech Sec. Litig.*,
  187 F.R.D. 97 (S.D.N.Y. 1999) ........................................................................ 32

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ............................................................................ 19

*In re Computer Memories Sec. Litig.*,
  111 F.R.D. 675 (N.D. Cal. 1986) ...................................................................... 24

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ...................................................................... 34

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................ 37

*In re Intelcom Group, Inc. Sec. Litig.*,
  169 F.R.D. 142 (D. Colo. 1996) ....................................................................... 32

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ...................................................................... 17, 22

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .............................................................................. 17

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 1991529 (N.D. Cal., 2007) ............................................................... 37

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .......................................................................... 15

*In re Tableware Antitrust Litig.*,

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS
AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING
SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION;
INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK,
N.A.

484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................................. 15, 16, 22

*In re Zynga Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) .................................... 21

*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014) ................................................... 25, 26

*Lane v. Brown*,
166 F. Supp. 3d 1180 (D. Or. 2016) .................................................. 15

*Medearis v. Or. Teamster Emplrs. Tr.*, No. CV.,
2009 WL 1788183 (D. Or., 2009) ..................................................... 16

*Moss v. U.S. Secret Serv.*,
2015 WL 5705126 (D. Or., 2015) ......................................... 24, 25, 30

*Nat'l Rural Telecomms. Coop. v. DIRECTV*, Inc.,
221 F.R.D. 523 (C.D. Cal. 2004) ..................................................... 17

*Nobles v. MBNA Corp.*, No. C,
2009 WL 1854965 (N.D. Cal. June 29, 2009) .................................... 17

*Ontiveros v. Zamora*,
303 F.R.D. 356 (E.D. Cal. 2014) ..................................................... 35

*Pecover v. Elec. Arts Inc.*, No. C,
2010 WL 8742757 (N.D. Cal., 2010) ............................................... 25

*Pokorny v. Quixtar Inc.*,
2011 WL 2912864 (N.D. Cal., 2011) ............................................... 20

*Rieckborn v. Velti PLC*,
2015 WL 468329 (N.D. Cal., 2015) ................................................. 37

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......................................................... 16

*Schueneman v. Arena Pharms.*, *Inc.*,

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS
AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING
SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION;
INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK,
N.A.

2018 WL 1757512 (S.D. Cal., 2018) ................................................................. 34

*Scott v. ZST Digital Networks, Inc.*,
2013 WL 12126744 (C.D. Cal. Aug. 5, 2013).................................................... 34

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) ...................................................................... 35, 37

*Smith v. Am. Greetings Corp.*,
2015 WL 4498571 (N.D. Cal., 2015) .......................................................... 16, 17

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................................... 15

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) ......................................................................... 29

*Sullivan v. Kelly Servs.*,
268 F.R.D. 356 (N.D. Cal. 2010) ..................................................................... 27

*Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) ......................................................................... 30

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016) .................................................................................... 30

*Viceral v. Mistras Grp., Inc.*,
2016 WL 5907869 (N.D. Cal., 2016) ............................................................... 22

*Villanueva v. Liberty Acquisitions Servicing, LLC*,
319 F.R.D. 307 (D. Or. 2017) .......................................................................... 24

*Villanueva v. Morpho Detection, Inc.*,
2015 WL 4760464 (N.D. Cal., 2015) ............................................................... 20

*Villegas v. J.P. Morgan Chase & Co.*,
2012 WL 5878390 (N.D. Cal., 2012) ............................................................... 22

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

*WalMart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011) ........................................................................ 25

*Walsh v. CorePower Yoga LLC,*
    2017 WL 589199 (N.D. Cal., 2017) ................................................. 20

*Walter v. Hughes Commc'ns, Inc.,*
    2011 WL 2650711 (N.D. Cal., 2011) ............................................... 20

*West v. Circle K Stores, Inc.,*
    2006 WL 1652598 (E.D. Cal., 2006) ............................................... 20

*Zepeda v. PayPal, Inc.,*
    2015 WL 6746913 (N.D. Cal., 2015) ............................................... 16

## STATUTES

ORS 59.055 and 59.115(1)(a) ................................................................. 9

ORS 59.115(1)(b) and 59.135(1)-(3) ..................................................... 9

ORS 59.137 (1) ...................................................................................... 9

## RULES

Fed. R. Civ. P.23(a) ....................................................................... 24, 28

Fed. R. Civ. P. 23(a)(2) ........................................................................ 25

Fed. R. Civ. P. 23(a)(3) ........................................................................ 26

Fed. R. Civ. P. 23(b)(3) .................................................... 29, 30, 31, 33

Fed. R. Civ. P. 23(c)(2) .................................................................. 35, 36

Fed. R. Civ. P. 23(c)(3) ........................................................................ 37

Fed R. Civ. P. 23(e) ..................................................................... *passim*

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

Fed. R. Civ. P. 23(g) ................................................................................... 37

OTHER AUTHORITIES

Newberg on Class Actions § 13:10 (5th ed. 2011) .......................................... 16, 20, 32

Manual for Complex Litigation (Fourth)
      § 21.632, at 320-21 (2004) ................................................................. 15

x
MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS
AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING
SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION;
INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK,
N.A.

## CERTIFICATION OF COMPLIANCE WITH LR 7-1

Counsel for Plaintiffs Amit Fatnani and Srinivas Guruzu (together, "Plaintiffs") and Defendants Columbia Banking Systems, Inc. as Successor to Umpqua Holdings Corporation; KeyBank National Association; JPMorgan Chase Bank, N.A.; and Intertrust Corporate and Fund Services LLC have conferred and this Motion is not opposed.

## MOTION

Pursuant to Fed R. Civ. P. 23(e), Plaintiffs Amit Fatnani and Srinivas Guruzu through their legal counsel (previously defined as "Plaintiffs") hereby move the Court for the following relief:

1.      Preliminary approval of a proposed class action settlement (the "Settlement") with Defendants Columbia Banking Systems, Inc. as Successor to Umpqua Holdings Corporation ("Umpqua"); KeyBank National Association ("KeyBank"); JPMorgan Chase Bank, N.A. ("Chase"); and Intertrust Corporate and Fund Services LLC ("Intertrust") (Intertrust, Umpqua, Chase, and KeyBank are referred to collectively as the "Settling Defendants," while Plaintiffs and the Settling Defendants are referred to together as the "Settling Parties") in the amount of $3,750,000.00 on the terms set forth in the written settlement agreement executed between the Settling Parties on July 24, 2025 ( "Settlement Agreement").[1]

---

[1] As discussed below, a true and correct copy of the Settlement Agreement is attached as Ex. C to the Centner Decl. Not filed with the Settlement Agreement is a confidential addendum addressing the threshold to trigger Settling Defendants' options to withdraw from and/or terminate the Settlement if a certain number of Class members or Class members with more than a certain aggregate amount of

Page | 1   MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

2.     Provisional certification of a settlement class (the "Settlement Class")

consisting of:

>      All individuals and entities that invested in the Alleged
>      Ponzi Scheme and/or contributed funds to the Alleged Ponzi
>      Scheme Individuals/Entities[2].
>
>      Excluded from the Class are Defendants, any entities in
>      which Defendants have a controlling interest, Sam Ikkurty,
>      Ravi Avadhanam, and any Judge to whom this action is
>      assigned and any member of such Judge's staff and
>      immediate family.

3.     Preliminary approval of counsel for the Class Representatives as Class

Counsel;

4.     The appointment of Stretto, which is currently assisting the Rose City

Fund Receivership[3] ("Receivership") under the direction of duly-appointed receiver

---

losses validly request exclusion from the Settlement Class. This confidential addendum is addressed
in paragraph 15 of the Settlement Agreement. *See* Fed. R. Civ. P 23(e)(3) ("The parties seeking
approval must file a statement identifying any agreement made in connection with the proposal.");
*Erica P. John Fund, Inc. v. Halliburton Co.*, No. 3:02-CV-1152-M, 2018 WL 1942227, at *5 (N.D. Tex.
Apr. 25, 2018) (noting that a stipulation of  settlement disclosing the terms of an agreement and
describing a confidential agreement satisfied Fed. R. Civ. P 23(e)(3)'s requirements).

[2] The "Alleged Ponzi Scheme" means the alleged fraudulent scheme referenced in the operative
Complaint. The "Alleged Ponzi Scheme Individuals/Entities" include Sam Ikkurty a/k/a Sreenivas I
Rao; Ravishankar Avadhanam; Jafia, LLC; Ikkurty Capital LLC; Rose City Income Fund I, LP; Rose
City Income Fund II, LP; MySivana, LLC; Merosa, LLC; Seneca Ventures, LLC; and any other entities
that played a similar role in the Alleged Ponzi Scheme.

[3] The Commodity Futures Trading Commission ("CFTC") filed an action against Sam Ikkurty and
others involved in perpetrating the Ponzi scheme giving rise to the instant litigation. *CFTC v. Ikkurty,
et al.*, N.D. Ill. 22:cv-02465. On May 11, 2022, that court appointed James Kopecky as the receiver
("Receiver") with full control over, *inter alia*, Rose City Income Fund I, Rose City Income Fund II LP,
Seneca Ventures, LLC, and Jafia LLC. The Receiver is tasked with, *inter alia*, marshaling assets and
distributing money to investors in these entities; those same investors are also Class members in the
instant case. The Receiver maintains the following website that provides more information about his
appointment and work: https://rosecityfundreceivership.com/.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN
PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA
BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION;
INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK,
N.A.

James Kopecky, as Settlement Administrator in this case. Stretto will work directly with Class Counsel to provide notice to Class members and handle other administrative issues like requests for additional information or exclusion from the class;

5.    Approval of Plaintiffs' proposed plan of allocation whereby net settlement proceeds will be paid into the Qualified Settlement Fund established in connection with the Receivership Estate, and thereafter distributed to victims of the Alleged Ponzi Scheme in accordance with the plan of distribution of Receivership assets;

6.    Approval of the form and method for providing notice of the Settlements to the Settlement Class; and

7.    Scheduling of a final hearing at which the Court will consider (a) final approval of the Settlements; (b) certification of the Settlement Class; (c) Class Counsel's request for reasonable attorneys' fees (not to exceed 33.33% of the gross settlement amounts) and litigation expenses, as well as reasonable service awards for the two Class Representatives (not to exceed $5,000 each); (d) entry of a Final Judgment and Claims Bar Order and Injunction as to the Settling Defendants; and (e) such other matters as the Court may deem appropriate.

This Motion is supported by the Declaration of Daniel Centner filed herewith, (hereinafter "Centner Decl.").

## MEMORANDUM IN SUPPORT

## I.    INTRODUCTION AND SUMMARY OF RELIEF SOUGHT

Plaintiffs have reached settlements in this action with KeyBank, Intertrust, Chase, and Umpqua that represent a reasonable recovery from those Defendants for the proposed Class while avoiding the costs and risks associated with continued litigation, including the danger of a smaller recovery or no recovery following further motion practice and/or trial.

Specifically, the Settling Parties have agreed that:

- Umpqua will pay $1,000,000;

- KeyBank will pay $1,000,000;

- Chase will pay $1,000,000; and

- Intertrust will pay $750,000,

for a combined total amount of $3,750,000, in exchange for full releases of liability as set forth in more detail in the Settlement Agreement.

As set forth herein, Plaintiffs and Class Counsel recommend the Settlement, which they believe meets the standard for preliminary approval. Preliminary approval of the Settlement is not opposed, and Plaintiffs respectfully request that preliminary approval be given to the Settlement without delay.

Plaintiffs propose that the Court schedule a single final approval hearing to consider the proposed settlements with each of the Settling Defendants, and that Plaintiffs be permitted to issue a single notice thereof in the interests of clarity,

economy, and efficiency. Consistent therewith, Plaintiffs also ask that the Court approve the proposed Notice and method of notice to Class members, which Plaintiffs believe complies with the requirements of Rule 23 and due process.

Plaintiffs seek the appointment of Stretto, which is currently working directly with the Receiver to assist with the claims process(es) in the Receivership, to act as the Settlement Administrator in this case.

Plaintiffs further propose that a final approval hearing should be scheduled for approximately 100 days (but no earlier than 90 days) after the deadline for providing any notices required under the Class Action Fairness Act, during which time Class members will have the opportunity to object to the Settlement and/or exclude themselves from the Class, and the Plaintiffs will prepare and file a motion for final approval of the Settlement, along with a request for payment of reasonable attorneys' fees and reimbursement of expenses, requests for reasonable service awards for Plaintiffs, and other/related supporting papers as may be ordered by the Court.

Finally, because all the requirements for class certification are met, Plaintiffs request that the Court provisionally certify the Settlement Class and appoint Plaintiffs' counsel as Class Counsel.

## II.    PROPOSED TIMELINE

Plaintiffs propose the following procedures for final approval of the pending Settlement:

1. The Court enters an Order preliminarily approving the Settlement and providing for notice thereof ("Preliminary Approval Order"), a

Page | 5   MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

proposed version of which is attached as **Exhibit B** to the Centner Decl., filed with this Motion;

2. The Court selects a date for the final approval hearing (the "Final Fairness Hearing") that falls approximately one hundred (100) days (but no earlier than 90 days) after preliminary approval of the Settlement;

3. No later than ten (10) days following the Court's entry of a Preliminary Approval Order, the Settlement Administrator shall send notice via email in substantially the same form as **Exhibit C-1** to the Centner Declaration to any Settlement Class Member for which the Settlement Administrator possesses that Settlement Class Member's email address, and shall send a letter with a printed version of **Exhibit C-2** via U.S. Mail to those Class members for whom the Settlement Administrator does not have an email address;

4. No later than the day before the Settlement Administrator provides notice per the prior paragraph, the Settlement Administrator shall establish a Settlement Website, which shall be operative until one year after the Effective Date or such later date as agreed to by the Parties, that shall contain the following document and/or information:

 (i) Notice in substantially the same form as **Exhibit C-2** to the Centner Declaration in both downloadable PDF and HTML formats;

 (ii) Contact Information page that includes the address and contact information for the Settlement Administrator, and addresses and telephone numbers for Class Counsel;

 (iii) Settlement Agreement;

 (iv) Signed Preliminary Approval Order;

 (v) Motion for final approval (once filed);

 (vi) Class Counsel's motion for attorneys' fees, costs, and service

awards (once filed), and

(vii) other appropriate documents and/or information about the Settlements as agreed to by the Parties or ordered by the Court.

5.  The Settlement Administrator shall establish and maintain a process through which Class members may request a printed copy of the Notice, which the Settlement Administrator shall provide by first class mail;

6.  Class Representatives shall file papers seeking final approval of the Settlement approximately 30 days after the Settlement Administrator first distributes Notice to the Settlement Class;

7.  Class Counsel shall file papers in support of any requests for reasonable attorneys' fees and expenses, and service awards for the Class Representatives, approximately 30 days after the Settlement Administrator first distributes Notice to the Settlement Class;

8. The Court shall set a deadline for postmarking of requests for exclusion from the Class that falls approximately 60 days after the Settlement Administrator first distributes Notice to the Settlement Class;

9. The Court shall set a deadline for delivery and filing of objections and intentions to appear at Final Fairness Hearing that falls approximately 60 days after the Settlement Administrator first distributes Notice to the Settlement Class;

10.  Class Counsel to file reply papers, if any, in support of final approval of the Settlements approximately 15 days prior to the Final Fairness Hearing, which reply papers shall address any objections to the Settlement and/or requests for exclusion as Class Counsel believes necessary; and

11.  Class Counsel to file proof of notice via declaration of the Settlement Administrator approximately 15 days prior to the Final Fairness Hearing.

Following final approval of the Settlement, the Settlement Administrator will subtract any approved fees and expenses and service award from the Settlement Fund, after which all remaining funds will be paid into the Qualified Settlement Fund established in connection with the Receivership Estate and thereafter distributed to victims of the Alleged Ponzi Scheme in accordance with the plan of allocation governing distribution of Receivership assets.

## III.     BACKGROUND

### A. Plaintiffs' Claims Against Settling Defendants

Plaintiffs' claims are based on the Settling Defendants' alleged participation in the Jafia Group's[4] Ponzi scheme. Plaintiffs allege that between December 2021 and March 2022, the Settling Defendants:

> participated in and provided material aid at several critical junctures in the misleading sale of the unregistered interests in the Rose City Ponzi Scheme, including accepting and clearing the funds necessary to complete the unlawful and unregistered sales transactions, and processing supposed "distributions" that kept the scheme afloat for well over a year as Ikkurty continued to lure in new investors.
>
> …
>
> Without their assistance, the securities transactions at issue would not have been confected, and the distributions that kept the scheme alive would not have been paid.

---

[4] Capitalized terms not otherwise defined herein shall have the meaning assigned in Plaintiffs' operative complaint and the Settlement Agreement.

ECF No. 168 (hereinafter "Complaint") ¶¶ 25, 71.

Plaintiffs allege that KeyBank, Chase, and Umpqua maintained bank accounts in the names of the various Jafia Group entities. *Id.* ¶¶ 32, 35. Plaintiffs further allege that these accounts were used to both receive funds necessary to complete unregistered investments into the Alleged Ponzi Scheme and to pay out distributions that kept the Scheme afloat. *Id.* ¶¶ 15, 33-34, 37-38. Plaintiffs also allege that Intertrust served as the Rose City Funds' "Administrator" responsible for, *inter alia*, processing initial investment transactions, handling distributions, redemptions, preparing account summary documents and statements, and, upon information and belief, assisting with regulatory compliance. *Id.* ¶ 57. Plaintiffs contend that the aforementioned acts and others described in the operative complaint constituted material aid to and participation in the Alleged Ponzi Scheme. *Id.* ¶ 71.

Based on these and other allegations, Plaintiffs assert four causes of action:

(1) Violations of ORS 59.115(3) for Participating In and/or Materially Aiding the Sale of Unregistered Securities in Violation of ORS 59.055 and 59.115(1)(a);

(2) Violations of ORS 59.115 (3) for Participating In and/or Materially Aiding Violations of ORS 59.115(1)(b) and 59.135(1)-(3);

(3) Violations of ORS 59.137 (1) for Materially Aiding Violations of ORS 59.135 (1), (2), and (3); and

(4) Joint Liability for Tortious Conduct of Ikkurty, Avadhanam, and the Jafia Group under Restatement (2d) 876 (b).

*Id.* at ¶¶ 182-231.

## B. Procedural Background

Plaintiff Amit Fatnani filed this action on May 15, 2023, and amended his complaint twice thereafter. On January 17, 2024, each of the Settling Defendants moved to dismiss the then-operative complaint, and on August 1, 2024, the Court issued a ruling denying those motions in part and granting those motions in part, including dismissing claims against Intertrust for lack of personal jurisdiction. *See* ECF 141. Claims asserted against Umpqua, Chase, and KeyBank survived the motion. *Id.*

An amended complaint was filed on August 30, 2024, asserting claims on behalf of Mr. Fatnani and newly added Plaintiff Srinivas Guruzu. Umpqua, Chase, and KeyBank answered that complaint on September 30, 2024, disputing any wrongdoing or liability to Plaintiffs. *See* ECF Nos. 146-148.

On April 22, 2025, the Settling Parties participated in a mediation with Robert Meyer of JAMS, through which they negotiated the arms-length settlement now presented to the Court. Centner Decl. ¶ 5. Thereafter, the Settling Parties executed the Settlement Agreement. Centner Decl. Ex. A. On May 30, 2025, Plaintiffs filed the operative Fourth Amended Complaint bringing Intertrust back into the action. ECF No. 168.

Through this Motion, Plaintiffs now seek the Court's Preliminary Approval of the proposed settlement with the Settling Defendants. In the interest of economy and efficiency, and to minimize the potential for confusion by Class members, Plaintiffs

request that the pending settlements be coordinated in a single proceeding, with a single notice to the Class and a single final approval hearing.

## IV.    SUMMARY OF KEY SETTLEMENT TERMS

## A. The Settlement Class Definition

The proposed settlement class (the "Settlement Class") includes "[a]ll individuals and entities that invested in the 'Alleged Ponzi Scheme' and/or contributed funds to the 'Alleged Ponzi Scheme Individuals/Entities.'" The Alleged Ponzi Scheme I n d i v i d u a l s / Entities include Sam Ikkurty a/k/a Sreenivas I Rao; Ravishankar Avadhanam; Jafia, LLC; Ikkurty Capital LLC; Rose City Income Fund I, LP; Rose City Income Fund II, LP; MySivana, LLC; Merosa, LLC; Seneca Ventures, LLC; and any other entities that played a similar role in the Alleged Ponzi Scheme. *See* Centner Decl. Ex. A (Settlement Agreement) at §1(gg).

Excluded from the Class are Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, Sam Ikkurty, Ravi Avadhanam, and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family. *Id.*

## B. The Settlement Consideration

The total Settlement amount to be paid by the Settling Defendants to the Settlement Class is $3,750,000, comprised of $1,000,000 payable by Umpqua, $1,000,000 payable by KeyBank, $1,000,000 payable by Chase, and $750,000 payable by Intertrust.

## C. Release of Claims

Once the Settlement is effective, the Class Representatives, all Class members who have not timely and validly excluded themselves from the Settlement Class, the Receiver, in his capacity as the Court-appointed Receiver for the Rose City Fund Receivership Estate, and on behalf of the Rose City Fund Receivership Estate, and each of the foregoing's agents, representatives, attorneys, heirs, administrators, executors, assigns, predecessors and successors in interest, and any other person or entity claiming by, through, on behalf of, or for the benefit of any of them, will forever release all past, present, and future claims of any nature whatsoever in any way relating to the Action, including without limitation all claims, suits, actions, allegations, damages (including, without limitation, compensatory, punitive, exemplary, rescissory, direct, consequential, or special damages, and restitution and disgorgement), liabilities, causes of action, complaints, lawsuits, responsibilities, demands, rights, debts, penalties, costs, expenses, fees, injunctive relief, attorney fees, expert or consulting fees, prejudgment interest, indemnities, duties, liabilities, losses, and obligations of any kind, known or unknown, foreseen or unforeseen, whether or not concealed or hidden, asserted or unasserted, existing or contingent, direct or indirect, anticipated or unanticipated, asserted or that could have been asserted by, or on behalf of, for the benefit of, or in the name of the Settlement Class members, whether legal, contractual, rescissory, statutory, or equitable in nature, whether arising under federal, state, common, or foreign law, that now exist or have

Page | 12   MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

ever existed from the beginning of time until the date of this Agreement that are based upon, arise out of, or are related in any way to: (1) the conduct, transactions, or occurrences set forth in any pleading in the Action; (2) the Action; (3) the purchase, issuance, sale, or solicitation of the sale of any securities or financial instruments (including, without limitation, promissory notes, equity offerings, limited partnership interests, membership interests, and limited liability company interests) issued by any Alleged Ponzi Scheme Individuals/Entities; (4) the Settling Defendants' and the Released Parties' provision of any banking, fund administration, or other services to any Alleged Ponzi Scheme Individuals/Entities or to or for the benefit of any purchaser or holder of any securities or financial instruments issued by Alleged Ponzi Scheme Individuals/Entities; and/or (5) the conduct of the settlement negotiations and the negotiation of the Settlement Agreement (except for representations or obligations expressly included in the Settlement Agreement), including without limitation fraud in the inducement thereof. Released Claims include, without limitation, any and all claims arising out of or relating to the Alleged Ponzi Scheme and the Alleged Ponzi Scheme Individuals/Entities. The "Released Parties" means (1) the Settling Defendants, (2) the Settling Defendants' predecessors, successors, affiliates, parents, subsidiaries, divisions, assignors, and assigneds, and (3) each of the foregoing's past, present, and future officers, directors, board and board members, principals, officials, employees, subsidiaries, parents, affiliates, divisions, joint venturers, contractors, subcontractors, subrogrees,

offices, controlled entities and persons, predecessors, successors, assignors, assigns, transferees, heirs, executors, shareholders, owners, investors, accountants, auditors, advisors, trustees, fiduciaries, consultants, agents, representatives, attorneys, partners, associates, senior counsel, managers, and members; and (4) each of the Settling Defendants' and Released Parties' insurers, reinsurers, excess insurers, underwriters, and claims administrators. For the avoidance of doubt, the term "Released Parties" includes, but is not limited to, Intertrust Group B.V., a former defendant in the Action. *See* Centner Decl. Ex. C at § 1(y).

## V.  NOTICE OF THE SETTLEMENT

The [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), which is attached as **Exhibit B** to the Centner Decl., provides that within ten (10) calendar days of the Court's order preliminarily approving the Settlements, the Settlement Administrator shall provide notice to Class members by emailing the notice of Proposed Settlements attached as **Exhibit C-1** to the Centner Declaration to all potential Class members at the email address (or U.S. Mail address if email address is unavailable, *see* Centner Decl. at Ex. C-2) of each such person as set forth in the Rose City Fund Receivership's records or who otherwise may be identified through further reasonable effort. Notice will also be posted on the Settlement Website. Centner Decl. at ¶¶ 15-16.

As noted above, the Settling Parties request that the Court approve an

omnibus notice of the settlements with each of the Settling Defendants. *Id.* at ¶ 13.

## VI.    ARGUMENT

### A.    The Proposed Settlement Warrants Preliminary Approval.

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of class action claims. "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Lane v. Brown*, 166 F. Supp. 3d 1180, 1188 (D. Or. 2016) (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution … especially … in complex class action litigation").

Approval of a settlement is a multi-step process, beginning with (i) preliminary approval, which then allows (ii) notice to be given to the class and objections to be filed, after which there is (iii) a motion for final approval and final fairness hearing. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); Manual for Complex Litigation (Fourth) § 21.632, at 320–21 (2004). Preliminary approval is thus not a dispositive assessment of the fairness of the proposed settlement, but rather determines whether it falls within the "range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted); *see also Collins v. Cargill Meacollt Sols. Corp.*, 274 F.R.D. 294, 301–02 (E.D. Cal. 2011).

The Court's primary objective at this stage is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing. 4 Newberg on Class Actions § 13:10 (5th ed. 2011). Preliminary approval establishes an "initial presumption" of fairness such that notice may be given to the class. *Tableware*, 484 F. Supp. 2d at 1079 (internal quotation marks and citation omitted); *see also Smith v. Am. Greetings Corp.*, No. 14–cv–02577–JST, 2015 WL 4498571, at *6 (N.D. Cal. July 23, 2015) (same).

Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representative or segments of the class; and (4) falls with the range of possible approval. *Bickley v. Schneider Nat'l Inc.*, No. 08-cv-05806-JSW, 2016 WL 4157355, at *1 (N.D. Cal. Apr. 25, 2016); *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2015 WL 6746913, at *4 (N.D. Cal. Nov. 5, 2015); *Fraley v. Facebook, Inc.*, No. C 11–1726 RS, 2012 WL 5838198, at *1 n.1 (N.D. Cal. Aug. 17, 2012); *Tableware*, 484 F. Supp. 2d at 1079; *see also 4 Newberg on Class Actions* § 13:14 (5th ed.). All factors weigh in favor of preliminary approval here.

## 1.    The Settlement is Entitled to a Presumption of Fairness as the Result of Non-Collusive, Informed, Arm's-Length Negotiations.

As the Ninth Circuit has stated, "[w]e put a good deal of stock in the product of an arm's length, non-collusive, negotiated resolution." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Medearis v. Or. Teamster Emplrs. Tr.*, No.

CV. 07–723–PK, 2009 WL 1788183, at *3 (D. Or. June 19, 2009) (quoting *Rodriguez*). "Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Nat'l Rural Telecomms. Coop. v. DIRECTV*, Inc., 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In re Pac. Enters*). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)) (other citations omitted). Accordingly, when proposed counsel are experienced and support a proposed settlement that is the result of arm's-length negotiations, there is an initial "presumption that the agreement is fair." *Smith*, 2015 WL 4498571, at *6; *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *6 (N.D. Cal. June 29, 2009)

As part of this analysis, courts considering a proposed settlement must confirm that the settlement was made on an informed basis. *See*, e.g., *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding "significant investigation, discovery and research" supported the district court's conclusion "that the Plaintiffs had sufficient information to make an informed decision about the Settlement"). In this case, the proposed Settlement arises out of extended and informed arm's-length negotiations between experienced counsel for the Settling Parties. *See* Centner Decl. ¶ 7. These negotiations only began after the Settling Parties engaged in nearly 18 months of litigation. *Id.* at ¶ 6. Plaintiffs' claims were tested through multiple

motions to dismiss that resulted in an extensive amendment to the original complaint before a subsequent round of motions was argued to the Court in June 2024. The parties also exchanged written discovery, with the Settling Defendants producing documents in response to Plaintiffs' requests. In connection with that discovery the Settling Parties debated whether certain bank-related communications created and shared pursuant to Section 314(b) of the USA Patriot Act were discoverable, with Plaintiffs ultimately filing a motion to compel on this issue that was withdrawn in light of the parties' agreement to mediate. Plaintiffs also received and reviewed thousands of pages' worth of documents from the Receiver appointed in connection with Rose City Receivership. *Id*. at ¶ 6. Plaintiffs' attorneys are experienced litigators recognized nationally for handling large-scale financial fraud and class action litigations, and based on that experience and the foregoing investigation they arrived at the conclusion that the proposed Settlement was a fair and equitable result for Plaintiffs and the proposed Class. *Id*. at ¶ 17.

Courts considering a pre-class certification settlement must also confirm that the proposed settlement was the result of good faith negotiations and not the result of fraud and collusion. *Bell v. Consumer Cellular, Inc.*, No. 3:15-cv-941-SI, 2017 WL 2672073, at *7 (D. Or. June 21, 2017). The proposed Settlement readily passes this test as well. The parties participated in a mediation with Robert Meyer of JAMS on April 22, 2025. Centner Decl. at ¶ 5. Through this exercise the parties were able to evaluate the strengths and potential weaknesses of their respective claims and

Page | 18   MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

defenses at and prior to mediation. *Id.* at ¶7. During mediation the parties continued to engage in vigorous debate regarding the viability of Plaintiffs' claims, informed by the views of their mediator, Mr. Meyer. *Id.* In sum, the mediation was an arms'-length process free from any conflicts of interest or collusion by and between the Settling Parties. *Id.*

The proposed Settlement is not the result of fraud or collusion between the parties, either. The Ninth Circuit has identified potential three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). None of these signs are present here. The proposed method of allocation does not purport to provide Plaintiffs with any greater share of the settlement funds, and Class Counsel's fees are subject to the Court's approval. Centner Decl. at ¶ 9; *see also* Centner Decl. Ex. C at §§ 9, 17. There is no "clear sailing" provision, and any fees awarded by this Court will be paid out of, not separate from, the gross settlement amount. *Id.* at ¶ 19. Finally, there is no reversion of any of the settlement amount to any Settling Defendant. *Id.*

Simply put, the Settlement is the result of informed, non-collusive, and hard-

fought negotiations, and Plaintiffs and their counsel recommend the Settlement as being fair, reasonable, adequate, and in the best interests of the Class members. Centner Decl. at ¶¶ 5-8, 17. "Great weight" should be accorded to this recommendation of class counsel. *Bell*, 2017 WL 2672073, at *6 (citations omitted); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (citation omitted). Accordingly, Plaintiffs respectfully request that the Court afford an initial "presumption of fairness" to the Settlement. *Villanueva v. Morpho Detection, Inc.*, No. 13–cv–05390–HSG, 2015 WL 4760464, at *6 (N.D. Cal. Aug. 12, 2015) (citation omitted); *see also Walsh v. CorePower Yoga LLC*, No. 16-CV- 05610-MEJ, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) ("[S]ettlements are entitled to 'an initial presumption of fairness' because they are the result of arm's- length negotiations among experienced counsel.") (citation omitted).

### 2.    The Settlement Does Not Suffer from Any Obvious Deficiencies.

The Settlement contains none of the obvious defects that can preclude preliminary approval, such as unreasonably high attorneys' fees, preferential treatment of a class representative, a deficient notice plan, a burdensome claims procedure, a plainly unfair allocation scheme, or overly broad releases of liability. *See* 4 Newberg on Class Actions § 13:15 (5th ed.) (citing, *inter alia*, *Pokorny v. Quixtar Inc.*, No. 07–0201 SC, 2011 WL 2912864, at *1 (N.D. Cal. July 20, 2011) (fee concerns); *West v. Circle K Stores, Inc.*, No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *12 (E.D. Cal. June 13, 2006) (preferential treatment of class

representatives); *Walter v. Hughes Commc'ns, Inc.*, No. 09–2136 SC, 2011 WL 2650711, at *15-16 (N.D. Cal. July 6, 2011) (deficient notice); *Fraser v. ASUS Computer Int'l*, No. C 12–00652 WHA, 2012 WL 6680142, at *3 (N.D. Cal. Dec. 21, 2012) (overly broad releases).

Specifically, Class Counsel will seek attorneys' fees of up to 33.33 percent of the gross settlement fund, subject to approval by the Court, and Plaintiffs will not receive any preferential treatment as part of the Settlement. Notice is appropriately tailored to provide actual notice, via email and/or U.S. Mail, to all Class members, and no claims procedure will be required thereafter as net settlement funds will be paid to the Receivership Estate for distribution to Class members pursuant to the approved plan of distribution therein. These considerations further weigh in favor of preliminary approval.

3. **The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Settlement Class.**

The third factor to consider is whether the Settlement grants preferential treatment to Class Representatives or segments of the Settlement Class. As noted above, the Settlement does not. The method of distribution provides for payment of the net settlement funds to the Receiver overseeing the Rose City Receivership Estate, who owes fiduciary and other duties to the Class members and is acting under the supervision of the Receivership Court. The Class Representatives are not favored or treated differently under that plan. Moreover, the proposed distribution plan has a

Page | 21  MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

reasonable and rational basis, which further weighs in favor of approval. *See In re Zynga Sec. Litig.*, No. 12-CV-04007- JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015).

### 4.    The Settlements Fall Within the Range of Possible Approval.

Courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement" to determine whether a settlement "falls within the range of possible approval." *Tableware*, 484 F. Supp. 2d at 1079–80. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (quoting *Officers for Justice*, 688 F.2d at 628). Consistent therewith, the adequacy of the amount offered in settlement "cannot be assessed in a vacuum. Rather, it must be considered in light of 'the strength of the plaintiff's case' and the risks in pursuing further litigation." *Viceral v. Mistras Grp., Inc.*, No. 15-CV02198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (citation omitted); *see also Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012), citing *In re Mego Fin. Corp.*, 213 F.3d at 459 ("[T]he fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment.")

Turning to the instant case, the Settlement is the product of a thorough assessment and evaluation of the strengths and weaknesses of Plaintiffs' case that weighed the benefits of guaranteed and timely recovery for the Class against the risk

of no recovery from the Settling Defendants, along with the possibility of further delay. Absent this Settlement, the Settling Defendants would have contested class certification prior to challenging Plaintiffs' claims through motions for summary judgment. While Plaintiffs and Class Counsel believe in the strength of their claims, the Settling Defendants have raised challenges to class certification and summary judgment arguments that presented a material risk of no recovery to the Class. Centner Decl. ¶ 18. With respect to Defendant Intertrust, Plaintiffs would have to overcome the additional hurdle(s) of first filing suit in a new venue where personal jurisdiction is proper and then surviving an initial motion to dismiss. If Plaintiff survived those tests, trial would be unlikely to take place until early 2027 at the earliest (and likely much later for Intertrust), and any judgments following trial would be subject to appeals, potentially presenting years of additional delay and risk. Accordingly, the Settlement—which provides for a gross recovery of $3,750,000, or approximately 10% of the Class's cumulative losses as currently calculated by the Receiver[5], payable by the Settling Defendants soon after the Court issues final approval—reflects Plaintiffs' and their Counsels' informed assessment of the risks inherent in further litigation. Against this backdrop, Plaintiffs submit that the Settlements fall within the range of possible approval.

---

[5] *CFTC v. Ikkurty et al.*, No. 1:22-cv-02465 (N.D. Ill.) at ECF 445 (reflecting $63,928,259 in allowed claims to date and approximately $26,277.000 in the Rose City Receivership Estate's QSF – also confirms paid on hourly basis). Notably, the amounts payable under this Settlement are significantly higher than the amounts payable pursuant to Plaintiffs' prior settlements with Defendants Evolve Bank and Trust and Mercury Technologies Inc. (*see* ECF No. 164).

Page | 23   MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

### B. The Court Should Make a Preliminary Determination that the Proposed Settlement Class Satisfies the Standard for Certification Under Rule 23.

To certify the proposed Settlement Class, the Class Representatives must satisfy all four of the requirements of Rule 23(a) and at least one basis for certification under Rule 23(b). *In re Hyundai and Kia Fuel Economy Litig.*, F.3d, 2019 WL 2376831, *4-5 (9th Cir. June 6, 2019) (en banc). Courts within the Ninth Circuit have taken a liberal view of class certification in cases like this one, recognizing that "securities litigation is particularly well suited for class action treatment." *In re Computer Memories Sec. Litig.*, 111 F.R.D. 675, 679 (N.D. Cal. 1986) (citing *Blackie v. Barrack*, 524 F.2d 891, 902–04 (9th Cir. 1975)).

In this case, Plaintiffs seek certification pursuant to Rule 23(b)(3). As described below, each of these requirements is met in this case.

### 1. The Rule 23(a) Requirements Are Met.

#### a. The Settlement Class Is So Numerous that Joinder Is Impracticable.

The first requirement for maintaining a class action is that the members of the putative class are so numerous that joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). This District follows the rule of thumb that "approximately forty members is sufficient to satisfy the numerosity requirement." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. 307, 314 (D. Or. 2017) (citations omitted). "Plaintiffs need not provide an exact number of Class members, 'so long as there are enough to make

Page | 24   MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

joinder impracticable.'" *Moss v. U.S. Secret Serv.*, No. 1:06–cv–3045–CL, 2015 WL 5705126, at *3 (D. Or. Sept. 28, 2015) (citation omitted). This standard is easily met here—documentation from the Receiver and Class Administrator that handled Plaintiffs' prior partial settlements with Defendants Evolve Bank & Trust and Mercury Technologies, Inc. confirms that there are in excess of 300 Class members. *See, e.g.*, ECF No. 162-1 at ¶ 2.

### b. Numerous Common Issues Exist.

Under Rule 23(a)(2), Plaintiffs must establish that there are "questions of law or fact common to the class." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 319 F.R.D. at 315. The requirements of Rule 23(a)(2) have "been construed permissively."

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011); *Moss*, 2015 WL 5705126, at *3. Accordingly, commonality is "a low hurdle easily surmounted." *Pecover v. Elec. Arts Inc.*, No. C 08–2820 VRW, 2010 WL 8742757, at *13 (N.D. Cal. Dec. 21, 2010) (citation omitted). "All questions of fact and law need not be common to satisfy the rule." *Ellis*, 657 F.3d at 981 (internal quotation marks and citation omitted). Rather, commonality requires the existence of even a single common contention that is capable of class-wide resolution. *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *WalMart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). However, the common contention or contentions necessary to establish commonality must be "apt to drive the resolution of the litigation." *Id.* (citation omitted). Relevant here, "in securities class action cases 'where putative Class

Page | 25   MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

members have been injured by the same material misrepresentations and omissions, the commonality requirement [is] satisfied.'" *Ciuffitelli v. Deloitte & Touche LLP,* No. 3:16-CV-00580-AC, 2019 WL 1441634, at *12 (D. Or. Mar. 19, 2019), report and recommendation adopted, No. 3:16-CV-00580-AC, 2019 WL 2288432 (D. Or. May 29, 2019) (citations omitted).

Here, the operative complaint identifies numerous common issues of fact and law, each of which are amenable to class-wide proof, including, without limitation, the following:

     **a.** Whether the Jafia Group Securities were sold to Class members in violation of the registration requirements of the Oregon Securities Law;

     **b.** Whether the Jafia Group Securities were sold by means of false statements of fact or omissions of material fact; and

     **c.** Whether the Settling Defendants participated or materially aided in the unlawful sales of Jafia Group Securities.

ECF No. 168 at ¶ 161. The determination of these common issues would resolve the allegations for the entire Class "in one stroke." *Hurst v. First Student, Inc.,* No. 3:15–cv–00021–HZ, 2015 WL 6437196, at *3 (D. Or. Oct. 22, 2015) (quoting *Jimenez,* 765 F.3d at 1165). As such, the commonality requirement is satisfied.

## C. The Class Representatives' Claims Are Typical of Those of Other Class Members.

The third requirement is that the "claims … of the representative parties are typical of the claims … of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other Class members have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *Hurst*, 2015 WL 6437196, at *3; *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 399 (D. Or. 1996). "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Ellis*, 657 F.3d at 984 (internal quotation marks and citation omitted).

Like commonality, typicality is to be construed permissively: "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent Class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998); *see also Sullivan v. Kelly Servs.*, 268 F.R.D. 356, 363 (N.D. Cal. 2010). The "focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005)). This requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon*, 976 F.2d at 508. In a securities class action, the claims and

nature of evidence "are generally considered sufficient to satisfy the typicality requirement." *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 281 F.R.D. 134, 139 (S.D.N.Y. 2012) (internal quotation marks and citation omitted).

Plaintiffs' claims here arise from the same events or course of conduct that give rise to claims of other Class members, and the claims asserted are based on the same legal theories. Plaintiffs allege that all Class members purchased Jafia Group Securities sold in violation of the Oregon Securities Law, and that the Defendants participated and aided in the unlawful sales of the Jafia Group Securities. Further, Plaintiffs are not subject to any unique defenses that could make them atypical of a Settlement Class Member. Therefore, the Class Representatives' claims are typical of those of the Class, and this factor is likewise satisfied.

### D. The Class Representatives and Their Counsel Adequately Represent the Interests of the Settlement Class.

The final requirement of Rule 23(a) is that the representative plaintiffs will fairly and adequately represent the interests of the Class. The relevant inquiries are "(1) do the named plaintiffs and their counsel have any conflicts of interest with other Class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d at 985 (quoting *Hanlon*, 150 F.3d at 1020). As to the first, Plaintiffs and Class Counsel have no conflicts with other Class members. As to the second, Plaintiffs and Class Counsel have demonstrated vigorous prosecution of this matter over the preceding two years. Plaintiffs are the only

individuals to file a case of this kind against third-party professionals concerning their participation in the Alleged Ponzi Scheme. Class Counsel has taken all necessary steps to prosecute the Settlement Class's claims and responded timely and zealously to the various defenses raised by the Settling Defendants, including opposing their motions to dismiss. Plaintiffs and Class Counsel respectfully submit that the foregoing demonstrates their adequate representation of the Settlement Class to date

### E. The Requirements of Rule 23(b)(3) Are Met.

A class may be certified under Rule 23(b)(3) upon a showing that "questions of law or fact common to the Class members predominate over any questions affecting only individual members", and that the class action mechanism is "superior" to other methods of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Both of these requirements are satisfied in this case.

### 1. Common Questions of Fact or Law Predominate.

"The predominance inquiry . . . asks 'whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (citation omitted), abrogated on other grounds by *Comcast Corp. v. Behrend*, 569 U.S. 27 (013). "The focus is on the relationship between the common and individual issues." *Id.* (internal quotation marks and citation omitted). To ensure that the class action is more efficient than individual actions, Rule 23(b)(3) requires that common issues predominate over issues that are particular to individual Class members. *See Amchem Prods. v. Windsor*, 521 U.S. 591,

Page | 29   MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

625 (1997) ("Predominance is a test readily met in certain cases alleging consumer or securities fraud."). "Predominance exists 'when common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication.'" *Moss*, 2015 WL 5705126, at *4 (quoting *Hanlon*, 150 F.3d at 1022).

Rule 23(b)(3) requires only a showing that questions common to the class predominate, and a plaintiff seeking class certification is not required to prove the answers to such questions. *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 468 (2013) ("In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor."). Predominance does not require a plaintiff to show a complete absence of individual issues, either. Rather, the predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and citation omitted). Predominance is not a matter of "nose-counting"; rather, "more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).

"Courts readily find predominance in securities cases alleging a common scheme accomplished through misrepresentations and omissions similar to those

alleged here." *Id*. at *15; *see Hyundai*, 2019 WL 2376831 at *8 ("We have held that these types of common issues, which turn on a common course of conduct by the defendant, can establish predominance in nationwide class actions.").

To prevail on the claims against the Settling Defendants at trial, Plaintiffs would need to prove, in part, that: 1) the Jafia Group committed a "primary violation" of the Oregon Securities Law by selling unregistered securities or selling securities by making untrue statements of material facts or omitting to state material facts; and 2) the Settling Defendants each committed a "secondary violation" by participating in or materially aiding in the sale of these securities. Each class member would rely on the same evidence or types of evidence to establish each of the foregoing at trial, as well as similar/identical legal arguments concerning that evidence. Common issues thus predominate over individual issues. As in *Amgen*, the proposed Settlement Class is "entirely cohesive: it will prevail or fail in unison. In no event will the individual circumstances of particular Class members bear on the inquiry." *Amgen*, 568 U.S. at 460. Indeed, the Supreme Court has recognized that predominance is a test "readily met" in cases alleging securities fraud. *Amchem*, 521 U.S. at 625. For these reasons, common issues predominate in this Action.

### 2. The Class Action Mechanism is Superior to Any Other Method of Adjudication.

Rule 23(b)(3) also requires that the Court determine whether a class action is superior to other methods of adjudication. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in

a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022; *see also Fosbre v. Las Vegas Sands Corp.*, 2015 WL 3722496, at *5 (D. Nev. June 15, 2015) ("It is preferable to determine these common questions once, rather than a multitude of times or not at all if the small value of individual recoveries would deter any single plaintiff from bringing suit."). Securities fraud class actions are generally found to be superior to individual actions. *In re Blech Sec. Litig.*, 187 F.R.D. 97, 107 (S.D.N.Y. 1999) ("[i]n general, securities suits such as this easily satisfy the superiority requirement of Rule 23"); *In re Intelcom Group, Inc. Sec. Litig.*, 169 F.R.D. 142, 149 (D. Colo. 1996) ("[T]he superiority of class actions in large securities fraud is well recognized."); 7 *Newberg on Class Actions* § 22:82 (5th ed.) ("Securities class actions rarely fail the superiority test.")

A class action is the superior method for resolving the claims at issue in this Action. But for a class action, Rose City investors would be forced to file approximately four hundred individual claims that "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs[,]" thereby demonstrating the superiority of a class action. *Hanlon*, 150 F.3d at 1023. Further, because the claims are being certified for purposes of settlement, the Court need not consider any purported issues with respect to the manageability of this case as a class action. *Amchem*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would

present intractable management problems … for the proposal is that there be no trial."); *Dubeau v. Sterling Sav. Bank*, 2013 U.S. Dist. LEXIS 123337, at *5 (D. Or. Aug. 28, 2013) (quoting *Amchem*).

For these reasons, the proposed Settlement Class meets the requirements of Rule 23(a) and 23(b)(3), and the Court should grant provisional certification for purposes of effecting the proposed Settlements.

### F.    The Proposed Method of Distribution is Fair and Reasonable.

Plaintiffs' proposed method of distribution seeks to pay the net settlement proceeds (*i.e.*, all amounts after deduction for Court-approved fees, expenses, and potential service awards) into the Qualified Settlement Fund established by the Receiver overseeing the Rose City Receiver Estate, which has a several year head-start analyzing and processing investor claims. This will minimize expenses to the Class while ensuring that Settlement Class Members are treated fairly, as the Receiver is a fiduciary of the Receivership Estate. It will also ensure consistency and continuity of process between this Action and the Receiver's work. Notably, the Receiver and his counsel are paid on an hourly basis subject to court approval, meaning, Settlement Class Members will not have to pay any additional contingent fees prior to receiving their distributions.[6] Instead, they will pay only the reasonable hourly rates associated with any administrative work that goes into the distribution.

Plaintiffs and Class Counsel believe this is a reasonable and rational way for

---

[6] *See, e.g., CFTC v. Ikkurty*, 1:22-cv-02465 (N.D. Ill.) at ECF  437.

Page | 33   MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

apportioning recovery amongst the Settlement Class Members. "When formulated by competent and experienced class counsel, an allocation plan need have only a 'reasonable, rational basis.'" *Scott v. ZST Digital Networks, Inc.*, 2013 WL 12126744, at *7 (C.D. Cal. Aug. 5, 2013) (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004)). Class members who have not submitted a timely and valid Request for Exclusion will receive their respective share of the n e t Settlement Fund in accordance with the timetable fixed in the Receivership proceeding.

Additionally and as discussed above, the Class Representatives will receive no special treatment or different allocation than any other Settlement Class Member. Because it has a reasonable and rational basis (and treats all Class members fairly and equally), the proposed method of distribution should be granted preliminary approval. *Schueneman v. Arena Pharms., Inc.*, 2018 WL 1757512, at *7 (S.D. Cal. Apr. 12, 2018).

### G. The Proposed Settlement Administrator Should be Approved.

As noted above, the CFTC's action against Sam Ikkurty, the mastermind of the Alleged Ponzi Scheme, has necessitated the appointment of a Receiver[7]. The Receivership's existing framework, including investor contact information and other data obtained or developed during the more than two years since the Receiver's appointment, provides a great benefit toward the efficient administration of this Settlement. Accordingly, Plaintiffs respectfully request the appointment of Stretto,

---

[7] *See* n. 3, *supra*.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

which has been working with and at the direction of the Receiver in the Receivership, as the Settlement Administrator in this case. In that capacity Stretto will work with Class Counsel to, among other things, disseminate notice to the Class, provide Class members with information and respond to any Settlement Class Member concerns, process and track any opt-outs, and ultimately work with the Receiver to distribute net settlement funds out of the Receivership's Qualified Settlement Fund Account.

### H. The Form and Method of Notice Should be Approved.

For any class certified under Rule 23(b)(3), "the court must direct to Class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a court approving a class action settlement "direct notice in a reasonable manner to all Class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "Although that notice must be 'reasonably certain to inform the absent members of the plaintiff class,' actual notice is not required." *Ontiveros v. Zamora*, 303 F.R.D. 356, 367 (E.D. Cal. 2014) (quoting *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994)). The form and method of notice proposed by the Class Representatives in Section V, *supra*, are appropriate because the form of the Notice complies with the requirements of Rule 23(c)(2)(B)(i)-(vii); and the method of notice complies with Rule 23(c)(2)(B) and due process requirements by providing the "best notice that is practicable under the circumstances."

Page | 35   MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004); *see also* Fed. R. Civ. P. 23(c)(2)(B) (describing specific information to be included in the notice). Here, the content of the proposed Notice complies with the specific requirements of Rule 23(c)(2)(B) because it clearly and concisely states in plain, easily understood language: (i) the nature of the action (Notice at pp. 3-4); (ii) the class definition (*id.* at p. 5); (iii) the claims, issues, and defenses (*id.*), (iv) that a Settlement Class Member may enter an appearance through an attorney (*id.* at p. 8); (v) Class members' right to exclude themselves from the class (*id.* at p. 7); (vi) the time and manner for requesting exclusion (*id.*); and (vii) the binding effect of a class judgment on all Class members who do not request exclusion. *Id.* at pp. 6-7; *see also Churchill Vill.*, 361 F.3d at 575 ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'").

Likewise, Plaintiffs proposed method for providing notice to Class members constitutes the best practicable notice under the circumstances. Plaintiffs propose to email the Email Notice to all potential Class members for whom the Settlement Administrator possesses email contact information, and to send a printed copy of the Email Notice– to those investors for whom email addresses are not available. Centner Decl. at ¶ 15. Consistent therewith, the Settlement Administrator will also publish

the Notice on the Settlement Website. Courts regularly approve similar notice plans in securities class actions. *See*, e.g., *Fidel v. Farley*, 534 F.3d 508, 511 (6th Cir. 2008) (adequate notice provided by publication of notice in INVESTOR'S BUSINESS DAILY and mailing notice to potential Class members); *Rieckborn v. Velti PLC*, 2015 WL 468329, at *3 (N.D. Cal. Feb. 3, 2015) (similar); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1171 (S.D. Cal. 2007) (similar); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (mailed and published notices satisfy Rule 23(c)(3)). The Court should approve both the proposed form and method of notice because they both comply with the requirements of Rule 23 and due process and represent the best practicable notice under the circumstances. *Silber*, 18 F.3d at 1454.

## I.    The Court Should Appoint Class Counsel

Rule 23 requires a court to appoint class counsel that will fairly and adequately represent the Class members. Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider, *inter alia*, counsel's (i) work in identifying or investigating potential claims; (ii) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (iii) knowledge of the applicable law; and (iv) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

Peiffer Wolf Carr Kane Conway & Wise, LLP, Silver Law, OlsenDaines, JurisLaw LLP, the Law Office of Peter M. Spett, and the Law Office of Kelly D. Jones

seek to be appointed Settlement Class Co-Lead Counsel. Peiffer Wolf, Silver Law, OlsenDaines, JurisLaw LLP, the Law Office of Peter M. Spett, and the Law Office of Kelly D. Jones have extensive experience in handling complex class actions, including securities class actions. Centner Decl. at ¶ 17. Moreover, the firms have vigorously investigated and prosecuted this case. Thus, the Court should appoint Peiffer Wolf Carr Kane Conway & Wise, LLP, Silver Law, OlsenDaines, JurisLaw LLP, the Law Office of Peter M. Spett, and the Law Office of Kelly D. Jones as Class Counsel for the Settlement Class.

## VII.    CONCLUSION

Counsel for the Settling Parties reached this Settlement following two years of litigation and vigorous arm's-length negotiations through a well-respected mediator. The Court is asked to grant preliminary approval of the proposed Settlement so that notice of the terms of the Settlement may be sent to the Settlement Class, and also to schedule a hearing to consider: i) final approval of the pending Settlement; ii) certification of the Settlement Class; iii) Class Counsel's request for fees and expenses; iv) Class Counsel's request for an incentive award for Plaintiffs; v) entry of Final Judgment and Claims Bar Order and Injunction as to the Settling Defendants; and vi) other matters as the Court may deem appropriate.

DATED this 24th day of July, 2025

Respectfully submitted,

/s/ Daniel Centner
Daniel Centner (admitted *pro hac vice*)
**Peiffer Wolf Carr Kane**

**Conway & Wise, LLP**
935 Gravier St., Suite 1600
New Orleans, LA 70112
dcentner@peifferwolf.com
Phone 504-523-2434
Fax 504-608-1465

Additional Counsel:

**Michael Fuller, OSB No. 09357**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
michael@underdoglawyer.com
Phone 503-222-2000

**Kelly D. Jones, OSB No. 074217**
Law Office of Kelly D. Jones
819 SE Morrison Street Suite 255
Portland, Oregon 97214
kellydonovanjones@gmail.
com Phone 503-847-4329

**Daniel J Nichols, OSB No. 101304**
JurisLaw LLP
Three Centerpointe Drive, Suite 160
Lake Oswego, Oregon 97035
dan@jurislawyer.com
Phone 503-334-0611

**Emily Templeton, OSB No. 221744**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
emily@underdoglawyer.co
m Phone 971-352-2503

**Nate Haberman, OSB No. 225456**
OlsenDaines
US Bancorp Tower
111 SW 5th Ave., Suite 3150
Portland, Oregon 97204
nate@underdoglawyer.co
m Phone 503-222-2000

**Scott Silver** (admitted *pro hac vice*)
Silver Law Group
11780 W Sample Rd
Coral Springs, Florida 33065
ssilver@silverlaw.com
Phone 954-755-4799

**Ryan Schwamm** (admitted *pro hac vice*)
Silver Law Group
11780 W Sample Rd
Coral Springs, Florida, 33065
rschwamm@silverlaw.com
Phone 954-755-4799

**Peter M. Spett** (admitted *pro hac vice)*
Law Office of Peter M. Spett
3020 Windsor Circle
Boca Raton,Florida,33434
pspett@spettlaw.com
Phone 561-463-2799

*Attorneys for Plaintiff and Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document was served on all counsel of record via operation of the Court's CM/ECF system on this 24th day of July, 2025.

*/s/ Daniel Centner*

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT BETWEEN PLAINTIFFS AND DEFENDANTS KEYBANK NATIONAL ASSOCIATION; COLUMBIA BANKING SYSTEM, INC. AS SUCCESSOR TO UMPQUA HOLDINGS CORPORATION; INTERTRUST CORPORATE AND FUND SERVICES, AND JPMORGAN CHASE BANK, N.A.